*A. G. M. Robertson* for assessor.

*Castle & Withington* for tax-payer.

---

·IN RE ASSESSMENT OF TAXES OF WILDER'S STEAMSHIP COMPANY, APPEAL BY THE TAX ASSESSOR FROM THE TAX APPEAL COURT, FIRST TAXATION DIVISION.

ARGUED MARCH 14, 1905.          DECIDED MARCH 27, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE DE BOLT IN PLACE OF WILDER, J.

INCOME TAX—*cost of replacing a steamer which became unserviceable under requirements of Federal inspectors not a loss to be deducted from income.*

>  The tax-payer built a steamer, the "Mokolii," in 1878 at a cost of $18,500. The steamer was in constant use until January, 1902, when she made her last trip. In August, 1903, the Federal inspectors required extensive repairs before renewing her certificate.

She was shortly afterwards broken up. The assessor refused to allow the tax-payer's claim of $18,500 as a loss to be deducted from its income and allowed only $1,000. The tax appeal court allowed the tax-payer's claim on the ground that it was a deductible loss from the income. Held: The steamer was not lost, nor was there a loss which for purposes of taxation is to be measured by estimated earnings which the steamer might have made if continued running, nor by the cost of replacing it with a new steamer.

### STATEMENT OF THE CASE.

The assessor's brief thus presents the case:

"In this case the tax-payer claimed a loss in its income tax return of the sum of $18,500 under the head 'losses incurred in trade.' The assessor allowed $1,000 and this appeal involves $17,500, which the tax appeal court allowed. The assessor appeals.

"It appears that in 1878 Wilder's Steamship Company built a steamer called the 'Mokolii' at a cost of $18,500. The vessel was in constant use until January, 1902, when she made her last trip. She was examined by the Federal inspectors in August, 1903, and they notified the company that it would have to make extensive repairs to the vessel before they would renew her certificate. The vessel was shortly afterwards broken up. The average life of a steamer is twenty years. We make the following contentions: (1) That this is not a case of 'loss' but only of depreciation. (2) That if it was a 'loss' it was a loss of capital, not income, therefore not deductible. (3) That if it is a deductible loss, only the actual value of the vessel on July 1, 1903, could be allowed, and that did not exceed the sum which the assessor allowed, to wit, $1,000.

"We presume that the court would take judicial notice of the fact that a steamer will gradually depreciate in value as time goes on, and we have the testimony of Mr. Wight that this particular steamer did constantly depreciate from the time she was built. In 1903 she had survived an average lifetime by five years.

"Depreciation is not deductible as a loss. *H. C. & S. Co. v. Assessor,* 14 Haw. 601, 607. The steamer 'Mokolii' represented an investment of capital. If she was lost it was a loss of permanent capital, not even floating or working capital, and much less income. We submit that such a loss is not deductible under

our statute. If, under the circumstances, this can be considered a loss at all only so much of it as occurred within the taxation year can be allowed. The value of the vessel on July 1, 1903, would be the maximum allowance. What was that value? Mr. Wight testified that the loss was claimed to be $18,500 because that was the original cost of the boat and 'she could do all of the work required up to the time she was condemned.' But he also said that 'the last time that she was surveyed by them, (the inspectors), they notified us that unless we made repairs in the hull, boiler and machinery such that the cost of repairs would be more than the cost of a new vessel they would not renew the certificate.' He also said that 'she was absolutely unsafe for use either as a freight vessel or a passenger vessel.' When asked what was her actual, intrinsic worth on July 1, 1903, he said, 'I cannot tell you.' The evidence further shows that the 'book value' of the 'Mokolii' was $1,333, and that that amount was written off to profit and loss when the vessel went out of existence. It is also in evidence that in its property tax return for 1901 the company returned the value of the 'Mokolii' at $5,000, and in 1903 she was returned at the value of $1,000.

"We contend that the burden of proving the amount of an alleged loss is upon the tax-payer, and that of the evidence adduced in this case that entitled to the most weight is the company's sworn tax return showing that on January 1, 1903, the actual value of the vessel was $1,000. The losses contemplated by the income tax act are 'actual' losses. The theory upon which the company proceeded in fixing the amount of loss in this case at the original cost of the steamer twenty-five years ago is absolutely untenable.

"Counsel for the tax-payer relies on the case of *H. C. & S. Co. v. Assessor,* 14 Haw. 601, quoting that 'in computing income the necessary expenses actually incurred in carrying on any business shall be deducted. This provision of the statute might apply if the old mill had given out so that it was practically necessary to erect a new mill on that account. The amount expended in the new mill up to the extent, not merely of the value of the old mill, but of the amount that would be required to put the old mill in good repair or to replace it, might perhaps be deducted as an expense.' The tax court cited the case of *Grant v. Railroad,* 93 U. S. 225, where it was held that the cost of replacing a wornout bridge with a new one should be classed as 'repairs' and not 'profits used in construction.' We submit

that neither the quotation made by counsel from the *H. C. & S. Co.* case nor the ruling in the *Grant* case are in point. A sugar mill is only a part of a larger scheme, to wit, the plantation, just as a vacuum pan, for instance, is a part of the mill. and when a part wears out and is replaced by a new one it is merely a matter of 'repairs.' A bridge is only a part of the railroad system to which it belongs. The replacing of the part is only 'repairs.' But a steamer, at least the steamer in question, is a complete thing in itself, and is not a part of a larger machine. When an old steamer has survived its usefulness and becomes worthless and a new one is purchased, it is not 'repairs' but a new investment of capital.

'Under our statute (section 4) it is not every expense incurred in carrying on a business that is deductible, for it is expressly provided by that section that amounts paid out for new buildings, permanent improvements or betterments shall not be deducted. The purchase of a new steamer, though considered a necessary expenditure in conducting the business would no doubt be held to be a permanent improvement. Here, the claim is not for the cost of the new steamer but for the value of the old one which the evidence shows had survived its usefulness.

"We submit that the assessor was more liberal than he should have been when he allowed the deduction of $1,000. The assessment should be sustained."

The tax-payer submits that "the 'Mokolii' was as capable of revenue production in her last year as she was in her first. The tax-payer's contention is that the total original cost of the steamer was a proper deduction and that her value on the books of Wilder's Steamship Co. is no criterion of the amount to be deducted under the income tax law. * * *

"The principles to be applied in deciding cases under the income tax law are very different from those which are to be applied in regard to direct taxation. Under direct taxation an increase or decrease in the value of property may be considered, while this consideration has little if anything to do with the income tax. The question under the latter law is in substance, What is a man's *net* income during the taxation year? or rather that is what the question becomes after the provisions of Revised Laws, Sec. 1281, have been applied. This distinction is very material in this case. The value of the 'Mokolii' on the books of the company was $1,333, which was also practically the

value for direct taxation. She was, however, still earning the full income on her cost of $18,500 and hence the depreciation could not be deducted under the income tax law until her earning capacity should be destroyed. *The law is so framed that the final accounting between the tax-payer and the government comes only when the actual tangible loss occurs, and when this accounting does come, the tax-payer is entitled to a full deduction for all amounts necessarily expended in keeping the business on the same footing as previously maintained.* This point is well illustrated in two cases. In *H. C. & S. Co. v. Tax Assessor,* 14 Haw. 601, the supreme court fully recognizes that it is practically the only net income of an enterprise which is subject to the tax, and that all expenditures in carrying on the business, all amounts spent for repairs, and all sums expended for keeping the plant up to a full working condition are properly to be deducted from gross receipts. The court refused to allow a deduction for an old mill, which was in good working condition, simply because the company found it convenient to erect a new and more efficient one, because the property on which a loss was claimed was still in hand and fit for work, but on page 689 (on rehearing) the court said:

" 'In computing income, the necessary expenses actually incurred in carrying on any business,' etc., 'shall be deducted. *This provision of the statute might apply if the old mill had given out so that it was practically necessary to erect a new one on that account. The amount expended in the new mill up to the extent not merely of the value of the old mill, but of the amount that would be required to put the old mill in good repair of replace it, might perhaps be deducted as an expense.'*

"In the case at bar there has been no voluntary abandonmen of the 'Mokolii,' as there was of the old mill. She was absolutely gone out of commission and no longer exists so far as the enterprise known as Wilder's Steamshop Co. is concerned.

"Another instructive case is *Grant v. R. R.,* Fed. Case 6159, 93 U. S. 225. There an old bridge on a railroad was replaced by an expensive and elaborate one, just as in this case the 'Mokolii' was replaced by the more expensive and elaborate 'Likelike.' The cost of replacing the old bridge less the value of the materials of it which were left was held to be a neces-

sary expense and properly deductible. The United States Supreme Court soys on page 228:

" 'The counsel for the government insists that this bridge was a betterment, because it was much more valuable than the old wooden bridge. But the assessor did not include the excess merely: he assessed the whole expenditure bestowed upon the new bridge without making any allowance for the old one. His idea seems to have been, that all earnings used in new constructions are made taxable by the act without reference to betterments, or to their being substituted for other constructions. Indeed his assessment is not for 'profits used in construction,' but for 'earnings used in constructing new Windsor bridge, $55,712.60.' In this view he was decidedly wrong. *Earnings expended on a new structure may or may not be profits. Whether they are or not depends on other things to be taken into account besides the mere fact of such expenditure. Had the assessment been merely for the increased value of the new bridge over the old one when in good repair, the case might have admitted of very different consideration.'*

"It would be hard to find a case much more strongly in point. * * * The 'Mokolii' running between certain ports is as much a part of the system of the tax-payer's steamship line as a bridge or a mill is of a railroad or a plantation. Possibly there is a slight difference in degree, but none in the real principle applicable to the case. A railroad must have bridges, a plantation must have a mill and a steamship line must have sufficient steamers for its traffic. It is true that the building of a new steamer for $100,000 is not a loss up to that amount, but, as the cases cited aptly show, it is a loss up to the amount necessary to replace the old steamer, i. e., $18,500. To deduct this is not to deduct the cost of a permanent improvement or betterment, but to deduct an actual loss. Suppose a steamer is purchased for $5,000 and her anticipated life is five years. Each year the vessel earns $5,000 and $2,500 is spent in repairs. Thus $25,000 is earned and $12,500 is spent, leaving an apparent net income of $12,500. There has, however, been an actual deterioration of the intrinsic value of the boat in each year of her service. This the law does not allow to be deducted from income, but it postpones the date of the deduction to the date when an actual tangible loss appears. Thus, while there has been an apparent net income of $12,500 for the five years, the time has come at

the end of them when a new boat will have to be built, not to increase the efficiency of the fleet of the company, but merely to maintain it in its normal condition. Therefore the apparent net income of $12,500 must necessarily be reduced by the full actual cost of the vessel because that is one item of expense which has been incurred in making the total gross earning of $25,000. The $5,000 originally paid is thus a proper deduction from the gross income of the year in which the loss is made, for the reason that it is as much an item of expense as the payment of the crew or the bill for fuel. The amount of the original purchase has been actually expended in earning the gross revenue of $25,000. The cost of the 'Mokolii' is of course not originally deducted, because it is a betterment, but the tax-payer is not to be compelled to pay for it twice and therefore when the same amount has to be expended in replacing or repairing it, the deduction is properly allowed. It might be fairer to allow the actual deterioration to be deducted from the income each year, but this is not the purpose nor intent of the law, nor would it be always easy of ascertainmen.t And it is for this reason that the 'book value' of the vessel, which is based on such actual yearly deterioration is wholly immaterial. Each year the stockholders have been paying by way of decreased dividends the actual cash value of the vessel, by means of which a sinking fund has been accumulated, the entire amount of which will have to be expended for the purchase of a new boat to replace the old one. If the 'Mokolii' had been retained in commission after the purchase of the new boat, the case would permit of very different consideration. But the reverse of this is the case. The new boat has taken the place of the 'Mokolii,' and that steamer no longer exists either as a revenue producing asset or otherwise."

Per curiam: There are undoubtedly losses of capital which, in the meaning of the income tax statute, are properly deducted from receipts in estimating net income. It is not as easy to classify such losses as it is to show whether specified instances are within the meaning of the statute. In this case the steamer "Mokolii" was not lost, whether in consequence of the requirements of the Federal inspectors or because, as stated in the testimony of the president of the company, the steamer had become "absolutely unsafe for use either as a freight vessel or

as a passenger vessel." The company could make no further use of its steamer and obtained by breaking it up and selling it its actual value, which is shown to have been less than $1,000. This is not a loss which for the purpose of taxation is to be measured by the estimated earnings which the steamer might have made if it could have continued running; nor was it a loss to be measured by the cost of replacing it with a new steamer. Whether the cost of the steamer that was built to take the place of the "Mokolii" up to the amount that would have been required to put the "Mokolii" in repair could be allowed as an expense as distinguished from a loss within the meaning of the statute we need express no opinion, as the evidence does not show whether the new steamer was obtained during the year in question.

The decree of the tax appeal court is modified accordingly.

*A. G. M. Robertson* for assessor.

*Kinney, McClanahan & Cooper* for tax-payer.